### Lake Erie & Western R. R. Co. v. Martin Murray.

1.  EVIDENCE—*Of the Sufficiency of Cattle-Guards.*—In a suit against
a railroad company based on its alleged failure to maintain proper cat-
tle-guards, it is proper to permit witnesses for the plaintiff to testify that
they had seen horses pass freely over cattle-guards of the same construc-
tion, in use in the same vicinity, the circumstances being similar; and
witnesses for the defendant to testify that the same make of cattle-guard
was in general use among first-class railroads, and was regarded as being
the best known device for the purpose, and such testimony should be
considered by the jury in connection with any other evidence touching
upon whether the guards were suitable and sufficient.

Trespass on the Case, for killing horses. Appeal from the Circuit Court of McLean County; the Hon. THOMAS F. TIPTON, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 4, 1896.

A. E. DeMange and H. W. Hall, attorneys for appellant; W. E. Hackedorn and John B. Cockrum, of counsel.

J. J. Morrissey and Thompson & Donahue, for appellee.

Mr. Presiding Justice Boggs delivered the opinion of the Court.

Judgment below for appellee, for the value of two horses, struck and killed by appellant's train, and for attorney fees.

The ground of recovery was the alleged failure of the company to provide a suitable and sufficient cattle-guard.

The guard was of a particular make known as " The steel surface cattle-guard."

The evidence questioned the sufficiency of the guard in point of plan and construction, and tended to show the slats of which the guard was composed were too close to the ground, and that weeds and grass had been allowed to grow between the slats of the guard in question.

Whether the guard was suitable and sufficient to turn horses was a question of fact. It is beyond question the horses passed over it, and consideration of the testimony bearing upon the contention has led us to the conclusion we are not warranted to say the decision of the jury, that the guard was not suitable and sufficient to have prevented such passage, was manifestly wrong.

No reason appears to ascribe the verdict to passion, prejudice or mistake.

The judgment must therefore be affirmed, unless error occurred in rulings of the court.

Counsel for appellant asked appellee the following question:

Q. How often had your horses been out in the highway? And to another witness propounded the following question:

Q. What places have you ever seen this black horse?

The court sustained objection to each question and appellant saved exceptions.

Counsel in their brief say the answers were intended to develop that the horses were frequently in the highway, and that from that fact insist the inference arises the animals were breachy, and would not be restrained by a "suitable" and sufficient cattle-guard.

Had answers of the most favorable kind been made to the questions, nothing would have been furnished other than the basis for the merest conjecture. If error was committed, which we do not conceive, it was altogether too unimportant to demand reversal, especially in view of the fact the subject was not further developed by any other testimony.

It was not improper to permit witnesses to testify they had seen horses pass freely over cattle-guards of the same make and construction in use on appellant's road in the same vicinity, the circumstances not being dissimilar. L. E. & W. R. R. Co. vs. Helmerick 38 Ill. 141.

Such testimony tended to prove cattle-guards of that type and plan of construction insufficient or unsuitable for the purpose.

It was proper for the appellant company to prove the "steel surface cattle-guard" was in general use among first-class railroads," and regarded as being the best known device for that purpose," as tending to support its contention that the cattle-guard in question was suitable and sufficient to turn horses.

The statute required the appellant company to make the guard suitable and sufficient to prevent * * * horses * * * from getting on the railroad.

The duty thus imposed upon the company by the statute is not to be absolutely measured by what it or other roads had done in the way of selecting and adopting devices of any kind as being the best wherewith to meet the demand of the statute.

That the device adopted was in general use by railroads

as the best known, was proper for consideration as tending to show it was sufficient and suitable for the purpose, but did not constitute a complete defense within itself.

It remained a question of fact, to be determined from all the testimony touching upon it, whether the guard was suitable and sufficient.

The instructions given for appellee were framed in accordance with this theory and in that respect are approved.

The complaint that instructions for the plaintiff imposed upon appellant company the duty of having guards sufficient to turn all horses, without regard to the question whether the particular animals were extraordinarily breachy or wild from fright, need not be further noticed than to remark the testimony in the case did not tend to show the horses were frightened at the time, or were more breachy than ordinary stock.

The substantial controversy in the whole case was of fact, whether the guard in its then condition was suitable and sufficient to turn horses.

There appears no reason the determination of the jury of that question should not be accepted by this court.

The judgment is affirmed.